# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| CF STAFFING SOLUTIONS, LLC, *et al*., | |
| Plaintiffs, | Case No.: 2:24-cv-02355-GMN-EJY |
| vs. | **ORDER DENYING** |
| DISTRICT HEALTHCARE SERVICES, LLC, *et al*., | **PARTIAL MOTION TO DISMISS** |
| Defendants. | |

Pending before the Court is the Partial Motion to Dismiss, (ECF No. 3), filed by Defendants District Healthcare Services, LLC, Breaking Silos in Medicine, LLC, and Habib Shamte, M.D. Plaintiffs CF Staffing Solutions, LLC and Max Casal filed a Response, (ECF No. 11). Because Plaintiffs filed a First Amended Complaint ("FAC"), (ECF No. 9), that supersedes Defendants' Motion to Dismiss, the Court DENIES the Partial Motion to Dismiss as MOOT.

Also pending before the Court is the Partial Motion to Dismiss and Transfer Under 28 U.S.C. § 1404(a), (ECF No. 12), filed by Defendants. Plaintiffs filed a Response, (ECF No. 20), to which Defendants replied, (ECF No. 23). For the reasons discussed below, the Court DENIES Defendants' Partial Motion to Dismiss and DENIES Defendants' request to transfer venue.

## I.   BACKGROUND

This action arises from alleged breaches of contracts for medical billing and other related services. (*See generally* FAC, ECF No. 9). Plaintiff CF Staffing provides business process offshore services to other entities. (*Id.* ¶ 14). In August 2024, Defendant Shamte, chief executive officer of District Healthcare and Breaking Silos, was introduced to Plaintiff Casal, a manager of CF Staffing and chief operating officer of non-party WC Health Group. (*Id.* ¶ 22).

Shamte was interested in duplicating WC Health Group's integrated healthcare delivery model for District Healthcare and Breaking Silos and creating an entity similar to WC Health Group in Washington, D.C. (*Id*. ¶ 23). Casal and Shamte entered into an agreement (the "Shamte Agreement") whereby Casal would provide certain services and information to Shamte in exchange for: (a) Shamte providing Casal a 5% equity stake in Breaking Silos; and (b) Shamte having his companies, District Healthcare and Breaking Silos, enter into agreements with CF Staffing for billing services and offshore staffing services. (*Id*. ¶ 24).

Plaintiffs allege that they performed under the Shamte Agreement and that Shamte only partially performed. (*Id*. ¶ 25, 27). CF Staffing and District Healthcare entered into a business relationship whereby CF Staffing provided services to District Healthcare pursuant to two separate agreements: (1) the Service Agreement ("District Healthcare Service Agreement"); and (2) the Medical Billing Agreement ("District Healthcare Medical Billing Agreement" and collectively with District Healthcare Service Agreement as, the "District Healthcare Agreements"). (*Id*. ¶ 17). In September 2024, District Healthcare terminated the relationship between itself and CF Staffing allegedly in violation of the District Healthcare Agreements. (*Id*. ¶ 18). A week later, CF Staffing sent District Healthcare a letter (the "Letter") putting District Healthcare on notice of their breach of the District Healthcare Agreements, but District Healthcare failed to comply with the terms of the Letter. (*Id*. ¶ 19).

CF Staffing also entered into a business relationship with Breaking Silos whereby it provided certain services to Breaking Silos pursuant to a Medical Billing Service Agreement (the "Breaking Silos Medical Billing Agreement"). (*Id*. ¶ 20). In September 2024, Breaking Silos also terminated the relationship between itself and CF Staffing allegedly in violation of the Breaking Silos Medical Billing Agreement. (*Id*. ¶ 21).

Shamte allegedly breached the Shamte Agreement by failing to provide Casal a 5% equity interest in Breaking Silos and failing to use CF Staffing as its exclusive billing and

1  staffing services provider. (*Id*. ¶ 30–31).  Plaintiffs seek damages in excess of $75,000. (*See*

2  *generally* id.).

3      By way of procedural background, CF Staffing initiated this action in state court

4  alleging claims for breach of contract, unjust enrichment, and declaratory relief against District

5  Healthcare and Breaking Silos, and breach of contract and unjust enrichment against Shamte.

6  (*See* Compl., ECF No. 1-1).  Defendants removed the matter to federal court and filed their first

7  Partial Motion to Dismiss. (Pet. Removal, ECF No. 1); (Partial Mot. Dismiss, ECF No. 3).

8  Plaintiffs then filed the FAC which adds a new party, Plaintiff Casal. (*See* FAC).  Plaintiffs'

9  FAC alleges the same causes of action except Plaintiffs' unjust enrichment claim is now pled

10  by Casal against Shamte and does not seek any declaratory relief. (*See generally id.*).

11  Defendants move to dismiss the claims alleged against Shamte under Federal Rule of Civil

12  Procedure 12(b)(6). (*See generally* Mot. Dismiss, ECF No. 22).  Defendants further argue that

13  if Plaintiffs' claims survive, the case should be transferred to the District Court for the District

14  of Columbia ("D.D.C."). (*See id.* 11:12).

15  II.  **LEGAL STANDARD**

16      Dismissal is appropriate under FRCP 12(b)(6) where a pleader fails to state a claim upon

17  which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

18  555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on

19  which it rests, and although a court must take all factual allegations as true, legal conclusions

20  couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, FRCP

21  12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements

22  of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain

23  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

24  face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A

25  claim has facial plausibility when the plaintiff pleads factual content that allows the court to

1    draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This

2    standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

3    **III.    DISCUSSION**

4            Defendants move for dismissal of the breach of contract and unjust enrichment claim

5    against Shamte. (*See generally* Mot. Dismiss).  They further seek the transfer of this case to the

6    D.D.C. (*Id.*).  The Court begins by addressing the breach of contract claim alleged against

7    Shamte.

8            **A.  Breach of Contract Claim Against Shamte**

9            Defendants first move to dismiss the breach of contract claim against Shamte.  They

10   advance three arguments for why the breach of contract claim should be dismissed: (1) the

11   inconsistencies between the original Complaint and the FAC warrant dismissal, (2) Casal fails

12   to plead a breach of contract claim, and (3) the Statute of Frauds invalidates the claim. (*Id.* 6:1–

13   2; 7:21–22).  The Court addresses each argument in turn.

14           **1.  Original Complaint v. FAC**

15           Defendants argue that dismissal is warranted because Plaintiffs' FAC alleges brand-new

16   claims with brand-new parties that run counter to the original Complaint. (*Id.* 6:1–2).

17   Defendants ultimately contend that the breach of contract claim against Shamte in the original

18   Complaint and the breach of contract claim against Shamte in the FAC "are too inconsistent to

19   make any sense." (*Id.* 6:19).  The original Complaint alleges that an oral agreement existed

20   between CF Staffing and Shamte "to provide consulting services, template agreements,

21   introductions to various specialized vendors, share certain proprietary information and various

22   other services." (Compl. ¶ 16).  In exchange, Shamte was to provide CF Staffing a 5% equity

23   interest in Breaking Silos and use CF Staffing as "the exclusive billing and staffing offshore

24   services provider for the Defendants." (*Id.*).  The FAC, on the other hand, alleges that Casal

25   entered into an agreement with Shamte based on Shamte's interest "in duplicating WC Health

Group's integrated healthcare delivery model for" District Healthcare and Breaking Silos and "creating an entity similar to WC Health Group in [Washington, D.C.]" (FAC ¶ 23).  In exchange, Shamte was still supposed to provide a 5% equity interest in Breaking Silos but also have District Health Care and Breakings Silos enter into formalized agreements for billing services. (*Id*. ¶ 24).

Defendants argue that the two complaints are inconsistent in that they involve different parties, and the agreements contemplate different performance and consideration. (Mot. Dismiss 7:4–6).  Plaintiffs explain that the inconsistencies were a result of miscommunication. (Resp. 14:18).  Plaintiffs contend that when Casal explained the Shamte Agreement to his counsel, he referred to CF Staffing and himself interchangeably which led to the misunderstanding that the Shamte Agreement was one between CF Staffing and Shamte, instead of between Casal and Shamte. (*Id*. 14:20–25).  Plaintiffs assert that the FAC simply swaps CF Staffing as the person who would provide the services under the Shamte Agreement with the true party, Casal. (*Id*. 15:8–9).  Moreover, Plaintiffs argue that the consideration and performances remain the same. (*Id*. 15:10; 15:14).  The FAC just greatly expands on the details of the services provided. (*Id*. 15:9–10).

Plaintiffs are not necessarily prohibited from making inconsistent, or even contradictory allegations, when amending a complaint. *PAE Gov't Servs., Inc. v. MPRI, Inc*., 514 F.3d 856 (9th Cir. 2007) ("Does the fact that an amended complaint (or answer) contains an allegation that is apparently contrary to an earlier iteration of the same pleading render the later pleading a sham?  The answer is: not necessarily.").  But courts are nonetheless allowed to consider prior allegations in determining the plausibility of the current pleadings. (*Id*.).  Moreover, courts are not required to accept as true contradictory allegations in an amended complaint without more facts. *See, e.g.*, *Stanislaus Food Prod. Co. v. USS-POSCO Indus.,* 782 F. Supp. 2d 1059, 1075–76 (E.D. Cal. 2011).

The Court finds that the differences between the original Complaint and FAC are not so inconsistent to warrant dismissal. For example, it is understandable that a lay person in Casal's position would refer to himself and the company he is a manager of interchangeably. Therefore, substituting the party who pleads the breach of contract claim does not warrant dismissal as Defendants suggest. Further, the Court does not find that the performance and consideration alleged in the complaints are wholly contradictory. It is plausible that Plaintiffs indeed pled facts in the FAC that expand on the details of the services provided under the Shamte Agreement. Accordingly, the Court DENIES Defendants' request to dismiss the breach of contract claim against Shamte on this ground.

### 2. Failure to State a Claim

Defendants further allege that Plaintiffs fail to state a claim for breach of contract because they do not allege that an enforceable contract exists. (*See generally id*.). A claim for breach of contract begins with an allegation that an enforceable contract exists. *See* Restatement (Second) of Contracts § 203 (2007); *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000), *overruled on other grounds*. An enforceable contract requires: (1) an offer and acceptance, (2) meeting of the minds, and (3) consideration. *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005).

Here, the parties only dispute the second element, specifically whether there was a meeting of the minds as to the Shamte Agreement's essential terms. (Mot. Dismiss. 7:21–22). Defendants first argue that the FAC does not allege what terms are "essential terms" in the contract, and the breach of contract claim against Shamte must be dismissed on this basis alone. (*Id.* 8:11–17). The Court disagrees. "Which terms are essential 'depends on the agreement and its context and also on the subsequent conduct of the parties, including the dispute which arises and the remedy sought.'" *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 255 (Nev. 2012) (citing Restatement (Second) of Contracts § 131 cmt. g (1981)).

1    The FAC alleges that Casal and Shamte entered into the Shamte Agreement whereby

2    Casal would provide certain services and information to Shamte in exchange for: (a) Shamte

3    providing Casal a 5% equity stake in Breaking Silos; and (b) Shamte having his companies,

4    District Healthcare and Breaking Silos, enter into agreements with CF Staffing for billing

5    services and offshore staffing services. (FAC ¶ 24).  These terms certainly allow the parties "to

6    ascertain what was required of the respective parties." *See May*, 119 P.3d at 1257.  Thus, the

7    Court finds that the FAC sufficiently alleges the essential terms of the Shamte Agreement for

8    purposes of this stage in the proceedings.

9    Alternatively, Defendants argue that the FAC does not indicate whether Shamte

10    expressed mutual assent to the essential terms. (Mot. Dismiss 8:19–20).  The Court again

11    disagrees.  Mutual assent, or a meeting of the minds, exists when the parties have agreed upon

12    the contract's essential terms. *Certified Fire Prot. Inc.*, 283 P.3d at 255; *see also Roth v. Scott*,

13    921 P.2d 1262, 1265 (Nev. 1996).  Under Nevada law, "[m]utual assent is determined under an

14    objective standard applied to the outward manifestations or expressions of the parties." *Alter v.*

15    *Resort Props. of Am.*, No. 59583, 2014 WL 2466282, *2 (Nev. May 30, 2014) (citation

16    omitted).  "If the outward words and acts of the parties can reasonably be interpreted as

17    acceptance, then mutual assent exists." *Id.*

18    Defendants argue that the FAC is too ambiguous to set forth a plausible allegation of

19    mutual assent because it does not, for example, allege "facts about who prepared the purported

20    Agreement, who approved it, or when it was allegedly approved or executed." (Mot. Dismiss

21    8:26–27) (quoting *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1091 (N.D. Cal. 2017)).

22    But the FAC alleges many facts that, accepted as true, state a claim to relief that is plausible on

23    its face. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  For instance, the FAC

24    states that Casal provided copies of entity formation documents, standard operation procedures,

25    and key performance indicators to Shamte. (*See* FAC ¶ 25).  Moreover, it alleges the following:

Casal gave various tours of WC Health Group's facilities in Las Vegas to various members of Shamte's companies' leadership teams; Shamte requested program description and financial model information for WC Health Group's Mobile Crisis Team which Casal provided; Casal provided Shamte with standard operation procedures and the financial model description information for WC Health Group's Psychiatric Urgent Facility and Housing Program; and Casal met with Shamte's management team weekly to provide consulting to those teams regarding WC Health Group's model and operations. (*Id.*).  Based on these allegations, the Court finds that the outward words and acts of the parties can reasonably be interpreted as acceptance, thus mutual assent exists.[1]  Accordingly, the Court DENIES Defendants' request to dismiss the breach of contract claim against Shamte on this ground.

### 3. Statute of Frauds

In footnote 3 of the Motion to Dismiss, Defendants incorporate a Statute of Frauds argument that they made in their Partial Motion to Dismiss the Original Complaint.  As such, the Court addresses their argument.

Defendants contend that the Shamte Agreement is void pursuant to the Statute of Frauds. The Nevada Statute of Frauds requires a writing for "[e]very agreement that, by the terms, is not to be performed within [one] year from the making thereof." Nev. Rev. Stat. 111.220(1). Only those oral agreements which are capable of being fully performed within a year from execution are not void under the Statute of Frauds. *See Stanley v. A. Levy & J. Zentner Co*. 112 P.2d 1047, 1052 (Nev. 1941).  The fact that performance exceeds one year does not render an agreement void where the terms do not indicate that it could not be performed within one year. *See Atwell v. Sw. Secs*., 820 P.2d 766, 769 (Nev. 1991) (finding that a verbal contract with

---

[1] Defendants also argue that the breach of contract claim should be dismissed because the parties were merely in negotiations and never entered into a contract. (Mot. Dismiss 9:1–12).  Indeed, preliminary negotiations fall short of an enforceable contract. *See May*, 119 P.3d at 1257.  But Plaintiffs plausibly allege that a contract was formed because they allege that there was an offer, an acceptance, a meeting of the minds, and consideration.  Thus, the Court DENIES Defendants' request to dismiss the breach of contract claim on this ground.

indefinite duration was not void under Nevada's Statute of Frauds where there was nothing to indicate that it could not be fully performed within one year).  Moreover, the Statute of Frauds does not encompass agreements that are "simply not likely to be performed," or agreements that are "simply not expected to be performed, within the space of a year from the making." *Stanley*, 112 P.2d at 1052 (citation omitted).  The statute does, however, apply to those agreements "[w]here the manifest intent and understanding of the parties, as gathered from the words used and the circumstances existing at the time [of execution], are that the contract shall not be executed within the year." *Id*.

Plaintiffs contend that there are no allegations in the FAC nor in the arguments of counsel that the alleged obligations of the Shamte Agreement could not be fully performed within a year. (Resp. 11:15–17).  The Court agrees.  Shamte's obligations under the Shamte Agreement were to provide equity to Casal and have his companies enter into billing and staffing agreements. (*See* FAC ¶ 24).  Those obligations do not contemplate activities or obligations that would, by necessity, take more than a year to perform because granting equity and entering into billing and staffing agreements can occur in an instant.  Casal's obligations likewise could have been accomplished in less than a year and there is no indication that his obligations required performance over more than a year.  Thus, the Shamte Agreement does not fall under the Statute of Frauds and the Court DENIES Defendants' request to dismiss the breach of contract claim against Shamte on this ground.  Thus, Plaintiffs' breach of contract claim against Shamte survives the Motion to Dismiss stage.

## B.  Unjust Enrichment Claim Against Shamte

Next, Defendants urge the Court to dismiss the unjust enrichment claim against Shamte. They argue that the claim should be dismissed for two reasons: (1) the unjust enrichment claim cannot stand where a breach of contract claim is alleged; and (2) the FAC fails to state a

1  plausible claim for unjust enrichment because it does not allege a benefit conferred on or

2  retained by Shamte. (Mot. Dismiss 9:13–11:11).

3        Defendants first argue that Plaintiffs' unjust enrichment claim against Shamte should be

4  dismissed because it was not pled as a true alternative theory of relief. (*Id.* 10:15–16).  The

5  Court disagrees.  Indeed, an unjust enrichment claim is not available when an express written

6  contract exists. *Leasepartners Corp., Inc. v. Robert L. Brooks Tr.*, 942 P.2d 182, 187 (Nev.

7  1997).  But that is not the case here.  Nowhere in the FAC does it allege that the Shamte

8  Agreement is written. (*See generally* FAC).  The distinction between a written versus oral

9  contract is important for the Court's consideration.  In *Alter v. Resort Properties of America*,

10  the Supreme Court of Nevada affirmed the trial court's decision to consider an unjust

11  enrichment claim alongside a breach of oral contract claim. *See generally* 2014 WL 2466282.

12  Thus, assuming the Shamte Agreement is not written, Plaintiffs are not foreclosed from

13  asserting both a breach of contract and unjust enrichment claim at this stage in the proceedings.

14        Defendants rely on *Gaia Ethnobotanical, LLC v. TI Payments LLC*, to argue that the

15  claim for unjust enrichment should be dismissed, without prejudice, and revived at a later time

16  if the Shamte Agreement is not an enforceable express contract. (Mot. Dismiss 11:5–11) (citing

17  No. 2:22-CV-01046-CDS-NJK, 2024 WL 987981, at *5 (D. Nev. Mar. 6, 2024)).  In *Gaia*

18  *Ethnobotanical,* the court dismissed the plaintiff's claim for unjust enrichment without

19  prejudice and held that the plaintiff "would be free to pursue its unjust enrichment claim" if the

20  contract is "deemed unenforceable." 2024 WL 987981, at *5.  But *Gaia Ethnobotanical* is

21  distinguishable from this case.  In *Gaia Ethnobotanical*, the parties agreed that an express,

22  written contract existed which prohibited the plaintiff from pursuing an unjust enrichment

23  claim, unless and until, it was determined that the written contract was unenforceable. *See*

24  *generally id*.  The parties here do not allege, let alone agree, that a written contract is at issue.

25

1    Now turning to the merits of Plaintiffs' unjust enrichment claim. Defendants contend

2    that this claim should be dismissed because it merely restates their breach of contract claim and

3    fails to plausibly allege a claim for unjust enrichment. (Mot. Dismiss 10:6–15). In Nevada, the

4    elements of an unjust enrichment claim are: "(1) a benefit conferred on the defendant by the

5    plaintiff; (2) appreciation of the benefit by the defendant; and (3) acceptance and retention of

6    the benefit by the defendant; (4) in circumstances where it would be inequitable to retain the

7    benefit without payment." *Ames v. Caesars Ent. Corp.*, No. 2:17-cv-02910, 2019 WL 1441613,

8    at *5 (D. Nev. Apr. 1, 2019) (quoting *Leasepartners Corp.*, 942 P.2d at 187). However, a

9    plaintiff need not have directly conferred the benefit upon the defendant to recover under a

10   claim of unjust enrichment, so long as the benefit was conferred as a result of the plaintiff's

11   actions. *Id.* (citing *Topaz Mut. Co., Inc. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992)).

12   Defendants aver that Plaintiffs' FAC fails to establish that Shamte personally accepted

13   any legally-sufficient benefit. (Reply 6:17–18, ECF No. 23). The Court disagrees. Plaintiffs'

14   FAC plausibly alleges a benefit conferred (Casal provided the agreed upon services to Shamte),

15   appreciated (Shamte desired to replicate WC Health Group's business model and was given the

16   insight to do so), and retained (Shamte possesses the relevant knowledge to run his businesses

17   according to the WC Health Group's model). (*See* FAC ¶ 25, 78–84). It likewise alleges that

18   Casal expected to be compensated by Shamte. (*See generally* FAC). Therefore, Shamte was

19   conferred a benefit as a result of Plaintiffs' actions which is sufficient to allege an unjust

20   enrichment claim. *See Topaz Mut. Co., Inc.*, 839 P.2d at 613. Thus, Plaintiffs' unjust

21   enrichment claim against Shamte survives the Motion to Dismiss stage. Accordingly,

22   Defendants' Partial Motion to Dismiss is DENIED.

23   **C. Transfer**

24   Lastly, Defendants move the Court to transfer the case to the D.D.C. (Mot. Dismiss

25   11:12). Plaintiffs oppose transfer. (Resp. 21:2–5).

Under 28 U.S.C. § 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district. . . where it might have been brought." *See* 28 U.S.C. § 1404(a). The Court first analyzes whether the D.D.C. is a judicial district in which the instant action "might have been brought." *See id.*

### 1. Proper Venue

Defendants first argue that Plaintiffs could have initiated the instant action in the D.D.C because all Defendants reside in the D.D.C. (Mot. Dismiss 13:1). A district is one where a suit might have been brought if, "when a suit is commenced, plaintiff has a right to sue in that district, independently of the wishes of defendant." *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). Transfer is appropriate when venue is proper and personal jurisdiction exists over the defendant in the transferee jurisdiction. *Id.* at 343–44. Under 28 U.S.C. § 1391(b)(1), venue in a civil action may be brought in "a judicial district where any defendant resides, if all defendants reside in the same state." A corporation "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Moreover, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).

Here, Defendants District Healthcare and Breaking Silos are incorporated in and have their respective principal places of business in Washington, D.C. (FAC ¶¶ 3, 4). Shamte is also a Washington, D.C. resident. (*Id.* ¶ 5). Moreover, substantial parts of the events occurred in Nevada and Washington, D.C. (Mot. Dismiss 13:4). Thus, venue is proper in the D.D.C.

Plaintiffs argue, however, that Defendants fail to establish that the D.D.C. has personal jurisdiction over Plaintiffs. (Resp. 18:9–13). But Plaintiffs confuse the relevant inquiry. The questions for purposes of determining whether transfer is appropriate is whether (1) venue is proper and (2) whether personal jurisdiction exists over the *defendant* in the transferee jurisdiction. *Hoffman*, 363 U.S. at 344. Because all Defendants are domiciled in Washington,

D.C., the D.D.C. would have personal jurisdiction over them. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (explaining that general jurisdiction exists over a corporation where its place of incorporation and its principal place of business are). Thus, the instant action "might have been brought" in the D.D.C. Accordingly, the transfer rests on the case-specific factors and the Court's discretion.

### 2. Interest of Justice

The Court now turns its discussion to whether transfer is in the interest of justice. The Supreme Court has instructed that a transferor court "adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23 (1988) (internal quotation marks omitted). Multiple convenience and fairness factors may be weighed to determine whether transfer would be "in the interest of justice" as required by 28 U.S.C. § 1404(a), including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

### a. Factors One and Two

Defendants concede that factor one is neutral because the relevant agreements were negotiated and executed in Nevada and Washington, D.C. (Mot. Dismiss 13:4–18). Defendants also concede that factor two is neutral because "federal judges are able to interpret and apply the contract law of other states," so either district would be competent in resolving the matter. (*Id*. 13:19–26) (quoting *Steven Cohen Prods., Ltd. v. Lucky Star, Inc.*, No. 2:12-CV-01995-GMN-CWH, 2016 WL 1170985, at *4 (D. Nev. Mar. 23, 2016) (citing *Operation: Heroes, Ltd. v. Procter & Gamble Prods., Inc.*, 903 F. Supp. 2d 1106, 1112 (D. Nev. 2012)).

1

2    **b. Factor Three**

3    Defendants contend that factor three, Plaintiffs' choice of forum, should not weigh

4    against transfer. (Mot. Dismiss 14:5–6). In general, a "plaintiff's choice forum is given

5    paramount consideration." *Quixtar Inc. v. Signature Mgmt. Team, LLC*, 566 F. Supp. 2d 1205,

6    1207 (D. Nev. 2008) (citation omitted). Indeed, "[w]hile a plaintiff's choice of forum is

7    normally entitled to a high level of deference, that level of deference is substantially less when

8    the plaintiff's chosen venue lacks a significant connection to the activities alleged in the

9    complaint." *Steven Cohen Prods., Ltd*, 2016 WL 1170985, at *4. Defendants argue that the

10   parties' activities underlying the allegations in the FAC have almost nothing to do with Nevada

11   and therefore this factor should not weigh in favor of keeping the case in the District of

12   Nevada. (Mot. Dismiss 14:5–6). But Plaintiffs assert that the parties met in Nevada on multiple

13   occasions and the agreements were negotiated in Nevada, and thus, Plaintiffs' choice of forum

14   should be given paramount consideration. (Resp. 19:2–15). The Court finds that there is a

15   significant connection between the District of Nevada and the activities alleged in the FAC

16   because Plaintiffs negotiated the agreements in Nevada and the parties held multiple meetings

17   in Nevada. Thus, this factor weighs against transfer.

     **c. Factor Four**

18   Factor four, the parties' contacts with the forum, similarly weighs against transfer.

19   Plaintiffs contend that the parties negotiated the agreements in Nevada. (*See* Casal Decl. ¶ 6,

20   Ex. 1 to Resp., ECF No. 20-1). Further, Shamte, in his individual capacity and in his capacity

21   as a representative of District Healthcare and Breaking Silos, traveled to Nevada to meet with

22   Plaintiffs regarding the agreements on at least three separate occasions. (*Id.* at ¶ 7). Plaintiffs

23   explain more specifically that Shamte was in Nevada to meet with Plaintiffs for a total of four

24   days between August 2023 to June 2024. (*Id.* at ¶ 8). Even more, Casal is a resident of Nevada.

25   (*Id.* at ¶ 2). And CF Staffing is a limited liability company that was formed under the laws of

the State of Nevada and its principal place of business is in Nevada. (*See id.* at ¶ 4).
Accordingly, there are sufficient ties to the District of Nevada that weigh against transfer.

### d.    Factor Five

The fifth factor, the contacts relating to Plaintiffs' cause of action in the chosen forum, is
neutral.  Plaintiffs allege that most of the parties' contacts relating to the causes of action took
place electronically—either via phone or email. (*Id.* ¶ 6).  And Plaintiffs were in Nevada for
nearly every electronic communication. (*Id.*).  Defendants also traveled to Nevada on three
separate occasions to negotiate the agreements at issue in this case. (*Id.* ¶ 7–9).  On the other
hand, the alleged breaches of contracts occurred in the D.D.C and it is presumed that
Defendants negotiated the agreements in the D.D.C at times. (Reply 8:26–28).  Therefore,
"there is no one prominent location for negotiation or execution that would sway this Court's
determination under this factor." *See, e.g.*, *Shee Atika Languages, LLC v. Kershner*, No.
107CV00009JWSDMS, 2008 WL 11429798, at *5 (D. Alaska Feb. 27, 2008) (where the
parties negotiated by phone and email and the parties were located in Virginia, Maine, and
Alaska and not "one place" it had no bearing on the courts analysis under § 1404); *CollegeNet,
Inc. v. Common Application, Inc.*, 355 F. Supp. 3d 926, 963 (D. Or. 2018).  After balancing the
relevant considerations, the Court finds that this factor is neutral.

### e.    Factor Six

Factor six, the differences in the costs of litigation in the two forums, weighs against
transfer.  Defendants argue that they would be unduly burdened if forced to litigate in Nevada,
and the costs to Defendants of litigating this action in Nevada would be significant. (Mot.
Dismiss 14:11–13).  They primarily focus on the cost to transport witnesses and evidence from
Washington, D.C. (*See generally id.*).

Defendants do not identify what evidence is located in Washington, D.C.  But even if
there is evidence located there, Plaintiffs contend that the evidence in this case is largely, if not

entirely, contained in electronic format. (Resp. 20:8–9).  As such, the Court finds that the location of the evidence is a neutral consideration. *See, e.g., Am. S.S. Owners Mut. Prot. And Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.,* 474 F.Supp.2d 474, 484 (S.D.N.Y. 2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents.").  Moreover, Defendants do not explain how many witnesses would need to be transported to the District of Nevada.  Further Plaintiffs contend that if the Court transferred venue, Plaintiffs would be required to retain counsel who is licensed in Washington, D.C. which would be an added expense for Plaintiffs. (Resp. 20:22–23).  In sum, Defendants have failed to show how the difference in costs of litigation between the two forums weighs in favor of transferring.  As such, this factor weighs against transfer.

### f. Factor Seven

Factor seven, the availability of compulsory process to compel attendance of unwilling non-party witnesses, weighs against transfer.  The convenience of the witnesses is typically the most important factor in ruling on a motion to transfer venue. *See Rubio v. Monsanto Co*., 181 F. Supp. 3d 746, 762 (C.D. Cal. 2016) (granting motion to transfer because key fact witnesses were "outside of the geographic reach of this district's subpoena power").  In evaluating the relative convenience of the witnesses, a court "must not consider simply how many witnesses each side has and the location of each," but rather "the importance of the witnesses" in light of the issues in the case. *Saleh v. Titan Corp*., 361 F. Supp. 2d 1152, 1160–61 (S.D. Cal. 2002).  Courts look to who the witnesses are, where they are located, what their testimony will be, and why such testimony is relevant. *A.J. Indus., Inc. v. U.S. Dist. Ct*., 503 F.2d 384, 389 (9th Cir. 1974).

Here, Defendants do not identify a single non-party witness, much less a non-party witness they cannot compel in Nevada.  Therefore, the Court cannot evaluate the relative

convenience of the witnesses, nor can it consider the importance of the witnesses.  Accordingly, this factor weighs against transfer.

### g.  Factor Eight

Finally, the eighth factor is the ease of access to sources of proof.  Plaintiffs assert that the evidence in this case is largely contained in electronic format. (Resp. 20:8–9).  The Court finds that the proof can be easily accessed no matter where the claim is brought.  Thus, this factor is a neutral consideration.

In sum, the Court finds that none of the factors used to determine whether the transfer would be "in the interests of justice" weigh in favor of transferring the matter.  Accordingly, the Court DENIES Defendants' request to transfer this matter to the D.D.C.

## IV.    <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Defendants' first Partial Motion to Dismiss, (ECF No. 3), is **DENIED as MOOT**.

**IT IS FURTHER ORDERED** that Defendants' Partial Motion to Dismiss and Transfer Under 28 U.S.C. § 1404(a), (ECF No. 12), is **DENIED**.


**DATED** this ___2___ day of May, 2025.

_____
Gloria M. Navarro, District Judge
United States District Court